UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE L. LUCIO,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. 8:17-cv-00046-SHK<br><br><br>OPINION AND ORDER |

Plaintiff Jose L. Lucio ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. §§ 405(g) and 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons discussed below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

///

## I. BACKGROUND

Plaintiff filed an application for DIB on May 7, 2013, and protectively filed an application for SSI on May 23, 2013, alleging disability beginning on December 1, 2011. Transcript ("Tr.") 195-202.[1] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on May 18, 2015, ALJ Joan Ho determined that Plaintiff was not disabled. Tr. 21-28. Thereafter, Plaintiff submitted additional medical evidence to the Agency, Tr. 445-60, and sought review of the ALJ's decision with the Appeals Council ("AC"). Tr. 16-17. The AC considered the new medical evidence and made it part of the record, however, review was denied on November 8, 2016. Tr. 1-6. This appeal followed.

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). "[W]hen a claimant submits evidence for the first time to the [AC], which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision

---

[1] A certified copy of the Administrative Record was filed on May 30, 2017. Electronic Case Filing Number ("ECF No.") 15. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

is supported by substantial evidence." Brewes v. Comm'r Soc. Sec. Admin., 682 F.3d 1157, 1159-60 (9th Cir. 2012).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." (citation omitted)). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(a), 416.920(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB or SSI]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).[2]
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB or SSI]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB or SSI]. If the claimant's

---

[2] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 416.920 et seq., when analyzing the ALJ's denial of Plaintiff's SSI application.

4

impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB or SSI]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB or SSI]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 [("the Listings")]. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB or SSI]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB or SSI]. See id.

Id. at 1098-99.

B. **Summary Of ALJ And Agency's Findings**

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2016." Tr. 23. The ALJ then found at step

one, that "[Plaintiff] has not engaged in [SGA] since December 1, 2011, the alleged onset date (20 C.F.R. 404.1517 et seq. and 416.971 et seq.)." Id.

At step two, the ALJ found that "[Plaintiff] has the following severe impairments: history of atrial septal defect, status post 2009 repair; history of acute decompensated heart failure; and hypertension (20 CFR 404.1520(c) and 416.920(c))." Id. The ALJ found, however, that "[Plaintiff's] kidney impairments, obstructive sleep apnea, and status-post forearm fracture have [not] resulted in significant functional impact during the period under consideration . . . [and] are accordingly assessed as nonsevere." Tr. 24. The ALJ also found that "[Plaintiff's] medically determinable mental impairments of posttraumatic stress disorder [("PTSD")], depressive disorder, and alcohol dependence in remission, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." Id.

In assessing Plaintiff's mental impairments at step two, the ALJ "considered the four broad functional areas set out in the disability regulations for evaluating mental disorders in [the Listings] . . . known as the paragraph B criteria." Id. (internal quotation marks omitted). The ALJ concluded that Plaintiff had only "mild" limitations in the first three functional areas of: (1) activities of daily living ("ADLs"); (2) social functioning; and (3) concentration, persistence, and pace. Id. In the fourth area of decompensation, the ALJ found that "[Plaintiff] has experienced no episodes of decompensation which have been of extended duration." Id.

The ALJ supported these findings by discussing Plaintiff's ADL's and the findings of evaluating Dr. Paul Fernandez, Ph.D., and State agency psychological reviewer Jennifer Duffy, Ph.D. Id. (citing Tr. 107-17, 296-303). With regard to Plaintiff's ADL's, the ALJ found that "although [Plaintiff] has some difficulty with attention and concentration and staying organized[,]" "[Plaintiff] appears to be

6

able to engage in quite a number of activities . . . including riding a motorcycle, working on his motorcycle in the garage, cleaning, cooking, running errands, socializing with others, managing rental of his mother's townhouse, finding and interviewing prospective tenants, and balancing his checkbook." Id. (citations omitted).

With regard to the opinion of Dr. Fernandez, the ALJ noted that at a psychological evaluation performed by Dr. Fernandez on February 11, 2014, "[Plaintiff] reported a history of treatment including counseling for alcohol abuse . . . [and] alleged difficulties with attention and concentration but reported engaging in a full range of daily activities." Id. (citing Tr. 296-303). The ALJ noted, however, that "[u]pon mental status examination, Dr. Fernandez noted adequate thought process, communication, memory/concentration, and executive functioning[ and b]ased on his interview and examination of [Plaintiff], Dr. Fernandez opined that [Plaintiff] would have mild difficulty dealing with workplace stresses but no other work-related functional limitations due to mental symptoms." Id. The ALJ gave "great weight" to Dr. Fernandez' opinion, "insofar as it is supported by Dr. Fernandez' own clinical observations and is consistent with the lack of evidence of any significant mental limitations in the record as a whole." Id.

With regard to Dr. Duffy's opinion, the ALJ assigned it "significant weight" insofar as Dr. Duffy opined that Plaintiff "has no more than mild limitations" because, the ALJ reasoned, "evidence received at the hearing level does not support a different conclusion." Id.

The ALJ concluded her assessment of Plaintiff's mental impairments by finding that "[b]ecause [Plaintiff's] medically determinable mental impairments cause no more than 'mild' limitations in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1))." Tr. 24-25. The ALJ provided further discussion of the medical evidence relating to

7

Plaintiff's physical impairments later in the decision, but provided no further discussion of any medical evidence relating to Plaintiff's mental impairments. See Tr. 26-27.

At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [the Listings]." Tr. 25.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to "perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [Plaintiff] can frequently climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; and frequently bend, kneel, stoop, crouch or crawl." Id.

At step four, the ALJ found that "[Plaintiff] is capable of performing [his] past relevant work [("PRW")] as a mechanical inspector[,]" as defined in the dictionary of occupational titles ("DOT") at 806.261-030, "as per the [DOT]" and "as generally performed in the national economy, but not as actually performed by [Plaintiff]." Tr. 27-28. The ALJ therefore concluded that "[Plaintiff] has not been under a disability, as defined in the . . . Act, from December 1, 2011, through [May 18, 2015,] the date of th[e] decision." Tr. 28. Having concluded that Plaintiff was not disabled at step four, the ALJ did not assess whether Plaintiff could perform other work at step five.

After the ALJ found that Plaintiff was not disabled and Plaintiff sought review of that decision, the AC "found no reason under [its] rules to review the [ALJ's] decision" and, consequently, denied Plaintiff's request for review. Tr. 1. In so denying Plaintiff's request, the AC specifically "considered the reasons [Plaintiff] disagree[d] with the decision and the additional evidence" Plaintiff submitted to the Agency, but found that neither "provide[d] a basis for changing the [ALJ's] decision." Tr. 2. The AC provided no further discussion or analysis of the additional evidence Plaintiff submitted.

## C. Summary Of Evidence Submitted To The AC

Included in the evidence submitted to the Commissioner after the hearing were a "psychiatric/psychological impairment questionnaire" prepared by Gary Strahle, Ph.D., dated March 12, 2015; a "psychological evaluation and testing report[,]" prepared by Nancy Woods, Ph.D., dated May 10, 2016; and a "mental impairment questionnaire[,]"prepared by Nancy Woods, Ph.D., dated July 23, 2016. Tr. 445-60 (capitalization normalized).

### 1. Dr. Strahle's March 12, 2015, Opinion

In the questionnaire prepared by Dr. Strahle on March 12, 2015, Dr. Strahle diagnosed Plaintiff with PTSD and re-current major depression, and assigned Plaintiff a "poor" prognosis. Tr. 445. Dr. Strahle checked boxes on the questionnaire identifying the following "positive clinical findings that demonstrate and/or support [his] diagnosis": poor memory; appetite disturbance with weight change; sleep disturbance; personality change; mood disturbance; emotional lability; loss of intellectual ability of fifteen IQ points or more; substance dependence; recurrent panic attacks; anhedonia or pervasive loss of interests; psychomotor agitation or retardation; paranoia or inappropriate suspiciousness; feelings of guilt/worthlessness; difficulty thinking or concentrating; suicidal ideation or attempts; oddities of thought perception, speech or behavior; perceptual disturbances; social withdrawal or isolation; blunt, flat or inappropriate affect; decreased energy; obsessions or compulsions; intrusive recollections of a traumatic experience; persistent irrational fears; generalized persistent anxiety; somatization unexplained by organic disturbance; hostility and irritability; and pathological dependence or passivity. Tr. 446.

Dr. Strahle indicated that Plaintiff's primary symptoms were PTSD, constant flashbacks, major depression, suicidal ideations, and paranoia. Tr. 447. Dr. Strahle opined that Plaintiff would have marked limitations in sixteen out of twenty functional areas, including Plaintiff's ability to:

- remember locations and work-like procedures;
- understand and remember one or two step instructions;
- understand and remember detailed instructions;
- carry out detailed instructions;
- maintain attention and concentration for extended periods;
- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance;
- sustain ordinary routine without supervision;
- work in coordination with or proximity to others without being distracted by them;
- make simple work related decisions;
- complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- interact appropriately with the general public;
- accept instructions and respond appropriately to criticism from supervisors;
- get along with co-workers or peers without distracting them or exhibiting behavioral extremes;
- maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;
- respond appropriately to changes in the work setting; and
- set realistic goals or make plans independently.

Tr. 448-50.

Dr. Strahle further opined that Plaintiff would be "moderately limited" in the remaining four functional areas identified, including Plaintiff's ability to: (1) carry out simple one or two-step instructions; (2) ask simple questions or request assistance; (3) be aware of normal hazards and take appropriate precautions; and (4) travel to unfamiliar places or use public transportation. Id.

10

Dr. Strahle indicated that Plaintiff would experience episodes of deterioration or decompensation in work settings, that Plaintiff is in "constant pain" "with withdrawal and lack of body awareness[,]" and that Plaintiff's impairments are ongoing and will last at least twelve months. Tr. 450-51. Dr. Strahle opined that Plaintiff was "incapable of even low stress" as evidenced by Plaintiff "exhibit[ing] cognitive deficits[,] impaired judgment[,] absent thinking[, and] distractibility in attention." Tr. 451 (internal quotation marks omitted). Dr. Strahle opined that Plaintiff's limitations applied as of September 1, 2010, that Plaintiff "cannot perform full-time employment on any competitive basis" and, therefore, Plaintiff "is considered disabled."[3] Tr. 452.

### 2. Dr. Woods' May 10, 2016, Opinion

In the psychological evaluation and testing report prepared by Dr. Woods on May 10, 2016, Dr. Woods diagnosed Plaintiff with PTSD and major depressive disorder. Tr. 454, 455. Dr. Woods also noted that "during the interview when [Plaintiff] was explaining how the [PTSD] started, he became overwhelmed by the details of the incident and was not able to get himself calmed down." Tr. 453. Dr. Woods explained, however, that a "therapist worked with [Plaintiff] to help him calm down enough so he could drive home" and report back at a later date to continue the evaluation. Id.

Upon Plaintiff's return to complete his evaluation with Dr. Woods, four psychological tests were administered, the first of which—a Weschler Adult Intelligence Scale-Fourth Edition test—revealed, in pertinent part, that Plaintiff "is often overwhelmed by emotion and withdraws. He has difficulty attending to tasks and his working memory was extremely limited. He was easily frustrated and would quit trying." Tr. 454. In the second test—a Beck Depression Inventory-

---

[3] Dr. Strahle's questionnaire also included several handwritten notes, however, the Court cannot decipher some of the Doctor's handwriting and, thus, it omits discussion of those notes that it cannot read.

11

Second Edition test—Plaintiff scored a thirty-nine, which "is indicative of severe depression. He is taking an antidepressant medication to reduce symptoms of depression, but it is not very effective." Id. In the third test—a Beck Anxiety Inventory test—Plaintiff was found to be in the "moderate range" but was noted to have "stated that he needs to stay alert for danger and that he frequently checks the doors and windows of his house prior to retiring to bed [and] sometimes he sleeps with a handgun under his pillow or in the bedside drawer." Id. The fourth test— an Amen's Brain System Checklist test—in pertinent part, "clearly indicat[ed] that [Plaintiff] remains hypervigilant and has difficulty interacting with others in social workplace settings[,]" and that Plaintiff "exhibits significant social anxiety and tends to seek out conflict." Tr. 454-55.

Dr. Woods concluded her report by opining that Plaintiff's "current mental state would not allow him to maintain a full time position in any occupation, due to his inability [to] refocus on the task at hand[,]" and that Plaintiff would not "be able to tolerate the stress inherent in the work environment, [or] maintain regular attendance or work without supervision." Tr. 455. Dr. Woods added that Plaintiff "is hypervigilant and may become aggressive if challenged by an authority[,]" which "would prohibit appropriate functioning in a workplace setting." Id. Finally, Dr. Woods opined that Plaintiff "would probably not be able to tolerate even a half day at work, due to his hypervigilance" and "[i]f [Plaintiff] feels overwhelmed or frustrated, he tends to withdraw or become irritable." Id.

### 3. Dr. Woods' July 23, 2016, Opinion

In the mental impairment questionnaire prepared by Dr. Woods on July 23, 2016, Dr. Woods diagnosed Plaintiff with PTSD and Major Depressive Disorder and she opined that these diagnoses would persist for at least twelve months. Tr. 456. In support of these diagnoses, Dr. Woods checked boxes indicating that Plaintiff experienced the following symptoms: depressed mood, hostility or irritability, difficult thinking or concentration, easy distractibility, intrusive

12

recollections of a traumatic experience, vigilance and scanning, social withdrawal or isolation, and nightmares. Tr. 457. Dr. Woods also indicated that Plaintiff "can get easily frustrated" and "may get overwhelmed by intrusive thoughts, hypervigilance and withdraw." Tr. 458.

Dr. Woods next checked boxes indicating that Plaintiff would have marked limitations in his ability to:
- understand and remember detailed instructions;
- carry out detailed instructions;
- maintain attention and concentration for extended periods;
- perform activities within a schedule and consistently be punctual;
- work in coordination with or near others without being distracted by them;
- complete a workday without interruptions from psychological symptoms;
- perform at a consistent pace without rest periods of unreasonable length or frequency;
- accept instructions and respond appropriately to criticism from supervisors;
- get along with coworkers or peers without distracting them; and
- set realistic goals.

Tr. 459.

Dr. Woods further opined that Plaintiff would have "moderate-to-marked" limitations in his ability to:
- understand and remember one-to-two step instructions;
- sustain ordinary routine without supervision;
- make simple work-related decisions;
- interact appropriately with the public;
- maintain socially appropriate behavior;
- adhere to basic standards of neatness; and
- respond appropriately to workplace changes.

Id.

Finally, Dr. Woods opined that Plaintiff would have "moderate" limitations in his ability to remember locations and work-like procedures and "none-to-mild" limitations in his ability to carry out simple, one-to-two step instructions and make plans independently. Id.

Dr. Woods concluded the mental impairment questionnaire by opining that Plaintiff would be absent more than three times per month as a result of his "impairments or treatment" and that Plaintiff' symptoms apply as far back as 2008. Tr. 460.

### D. Summary Of Plaintiff's Arguments

In this appeal, Plaintiff argues that the ALJ erred by: (1) finding that his PTSD "imposes no functional limitations"; (2) "rejecting the physical function assessments of examining internist Ella-Tamayo and of treating family practitioner Florian"; and (3) "discrediting [Plaintiff's] testimony regarding his functional limitations." ECF No. 21, Joint Stipulation at 5.

#### 1. Plaintiff's Specific Arguments Regarding His PTSD

Plaintiff argues that the ALJ erred by finding that his PTSD imposed "no functional limitations." Id. Plaintiff asserts that he "stopped working specifically due to symptoms and behavior stemming from the trauma of his daughter being shot" and that "[it] is those symptoms that [he] specifically identified when asked why he can no longer work" at the administrative hearing. Id. at 8 (citation omitted). Plaintiff further asserts that "[d]espite the fact that his PTSD symptoms are the primary identified reason for his inability to continue working, the ALJ actually found that none of [his] mental impairments impose any limitations whatsoever on his ability to function." Id. (citation omitted).

#### 2. The Commissioner's Finding That Plaintiff's PTSD Was Nonsevere Is Not Supported By Substantial Evidence.

As an initial matter, the Court notes that the ALJ did not find that Plaintiff's PTSD imposed "no functional limitations[,]" or not "any limitations

14

whatsoever[,]" as Plaintiff asserts. Id. at 5, 8. Rather, as discussed above, the ALJ found that Plaintiff's PTSD was nonsevere and caused no "more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." Tr. 24. The ALJ supported this finding, in part, by relying on Drs. Duffy and Fernandez' opinions because, the ALJ reasoned, their opinions were consistent with the evidence, or the lack there of, at that time. However, the later submitted opinions of Drs. Strahle and Woods suggest that the limitations caused by Plaintiff's PTSD are more severe than the ALJ recognized in her unfavorable decision.

For example, as discussed above, Drs. Strahle and Woods collectively opined that Plaintiff would have marked limitations in twenty-six functional areas and moderate or moderate-to-marked limitations in another eleven areas. Drs. Strahle and Woods also opined that Plaintiff was incapable of coping with even low stress, that Plaintiff could not perform full-time employment on any competitive basis, that Plaintiff's impairments would cause him to be absent more than three times per month, and that Plaintiff's impairments date back to 2008 and 2010 and will last for at least twelve months.

Because Drs. Strahle and Woods endorsed far greater limitations than the ALJ recognized, and because the ALJ did not have the benefit of reviewing these opinions when she rendered her unfavorable decision, the Court finds that the ALJ's conclusion—that Plaintiff's PTSD was nonsevere and imposed no more than minimal limitations in Plaintiff's ability to work—is not supported by substantial evidence. Consequently, the Court also finds that the Commissioner's conclusion—that Plaintiff has not been under a disability, as defined in the Act during the relevant time period—is similarly not supported by substantial evidence. Accordingly, because the Court finds that the Commissioner's decision was not supported by substantial evidence, the Court does not review Plaintiff's additional assignments of error.

///

# IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings. See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." (citation and internal quotation marks omitted)). On remand, the ALJ shall consider and discuss the opinions of Drs. Strahle and Woods, as well as Plaintiff's mental limitations caused by Plaintiff's PTSD.

IT IS SO ORDERED.

DATED: 6/4/2018

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge